UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| REDLEY W. | : |
| | : |
| v. | :    C.A. No. 23-00072-WES |
| | : |
| KILOLO KIJAKAZI, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on February 17, 2023 seeking to reverse the Decision of the Commissioner.  On June 26, 2023, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 10).  On August 17, 2023, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner.  (ECF No. 12).  On August 30, 2023, Plaintiff filed a Reply.  (ECF No. 14).

This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 10) be DENIED and that the Commissioner's Motion for an Order Affirming (ECF No. 12) be GRANTED.

    **I.**    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 6, 2021 (Tr. 183-186) alleging disability since April 1, 2014.  The Application was denied initially on February 16, 2021 (Tr. 89-97 and on

reconsideration on April 8, 2021. (Tr. 99-105). Plaintiff requested an Administrative Hearing. On November 24, 2021, a hearing was held before Administrative Law Judge Tracy LaChance (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 29-87). The ALJ issued an unfavorable decision to Plaintiff on March 1, 2022. (Tr. 12-24). The Appeals Council denied Plaintiff's request for review on December 19, 2022. (Tr. 1-3). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in her consideration of the opinion of Diane Whipple, Ph.D. Plaintiff further contends the ALJ's Step 5 finding is not supported by substantial evidence because the VE failed to explain the methodology or basis for the numbers of jobs cited.

The Commissioner counters that Dr. Whipple's opinion was properly evaluated and considered by the ALJ. The Commissioner also asserts that the Step 5 challenge was waived but that it is alternatively supported by substantial evidence.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as

unfavorable to the decision.  Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent

with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the

treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that

right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D.   The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing

other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S.

458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

    (6)    The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d

1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff had severe impairments of posttraumatic stress disorder, anxiety, depression and tic disorder. (Tr. 17). The ALJ determined at Step 3 that none of Plaintiff's impairments met or medically equaled the severity of one of the Listings. (Tr. 18). She found that Plaintiff had the RFC to perform a limited range of light work with certain enumerated exertional and nonexertional limits. (Tr. 19-20). At Step 4, the ALJ noted that Plaintiff had no past work but denied disability at Step 5 because Plaintiff's RFC did not preclude him from performing certain light, unskilled jobs that exist in significant numbers in the national economy. (Tr. 23-24).

### B. The ALJ Properly Evaluated the Opinion of Dr. Whipple

Plaintiff's alleged onset date was April 1, 2014 and his date last insured for DIB was December 31, 2015. (Tr. 17). Nearly three years later, in December 2018 and January 2019, Plaintiff "participated in an evaluation to obtain benchmarks of current cognitive and social/emotional functioning." (Tr. 382, emphasis added). Dr. Whipple subsequently issued her Neuropsychological

-11-

Evaluation that provided "Behavioral Observations," a description of Plaintiff's "Social and Emotional Functioning," as well as "Diagnostic Impressions and Recommendations." Dr. Whipple stated that her "recommendations may facilitate Redley's personal development" and then noted that Plaintiff is a "candidate" for consultation with an ophthalmologist, psychotherapy, nutrition counseling, psychotropic medication consultation, school/work accommodations and supplemental security income/social security disability insurance. (Tr. 390).

The ALJ discussed the Evaluation in several portions of her Decision. First, she accurately recounted that the examination "noted no problems with memory or overall cognition, test results noting well above average verbal knowledge, upper band of average nonverbal fluid reasoning, and well above average verbal fluency." (Tr. 18). Later, the ALJ noted that the exam discussed Plaintiff's report of a 2015 "breakdown." (Tr. 21). The ALJ went on to recount that Plaintiff "was noted to report being anxious and exhibited vocalizations and motor movements. Testing of attention and executive functioning noted impaired attention compared to processing speed and well below average attention on at least one task due to not following directions. His inhibition was noted to be impaired. However, he had average memory and well above average to average information processing speed." Id. Ultimately, however, the ALJ concluded that Dr. Whipple's opinion was "not persuasive," in part, because the finding that Plaintiff was a "candidate for school/work accommodations" was "vaguely worded." (Tr. 22). Moreover, the ALJ correctly noted that Dr. Whipple's opinion was not "consistent with the overall record, particularly treatment during the relevant period." Id. Finally, the ALJ accurately noted that the portion of the opinion that opined that Plaintiff was a "candidate" for SSI/SSDI was an opinion "on an issue reserved for the Commissioner and is inherently neither valuable nor persuasive." Id.

Plaintiff contends that Dr. Whipple's "recommendations and considerations" were "mostly ignored" in the ALJ's decision and that the treatment records from within the insured period "while

admittedly not extensive, do not contradict" Dr. Whipple's reported findings. (ECF No. 10 at p. 10). As examples of findings that support Dr. Whipple's conclusions, Plaintiff notes that he was admitted to a partial hospitalization program in February and March 2014, and that his Intake with Lincoln Psychiatric Services in November 2015 "noted history of emotional and sexual abuse, self-injurious behavior, suicidality, and social problems / family issues." Id. (internal quotation omitted). Neither of these discrete examples further Plaintiff's case. First, the partial hospitalization took place prior to the alleged onset date. And as accurately observed by the ALJ, the record reflects that thereafter, "treating notes are limited for significant disturbances in mental status," (Tr. 21, citing Tr. 309-320), and that "[i]n terms of treatment, he was sustained on medication," id., and reported doing "very well" with medication with increased activities of daily living. (Id., Tr. 316). The record also reflects that Plaintiff reported in March 2015 that his depression was "improved" and he was "applying to go back to school…to get a degree in culinary arts, hoping to open a Japanese restaurant," (Tr. 312), and, finally, he reported "doing well overall" in August 2015. (Tr. 309). Second, the Intake Form, which notes anxious and depressed mood, does not itself establish that Plaintiff would have a more limited mental RFC than the one found by the ALJ.

Plaintiff also argues in his Reply Brief that the ALJ erred in failing to treat Dr. Whipple's statements as "other medical evidence" as defined in 20 C.F.R. § 416.913(a)(3). (ECF No. 14 at p. 3). The Court disagrees. As previously noted, the ALJ found Dr. Whipple's opinion to be "not persuasive" because it was "vaguely worded" as to the "school/work accommodations" and not consistent with the overall record, "particularly treatment during the relevant period." (Tr. 22). Since Dr. Whipple did not opine on Plaintiff's physical and mental abilities or limitations in terms of work-related functions, her assessment is not considered a "medical opinion" that the ALJ was required to address. 20 C.F.R. § 416.913(a)(2). Even if the Evaluation qualified as "other medical evidence," as argued by Plaintiff in his Reply, the ALJ appropriately considered and discussed Dr. Whipple's overall Evaluation, and the ALJ's findings are supported by substantial evidence. Finally, as to the "recommendation" that

-13-

Plaintiff is a "candidate" for SSI/SSDI, the ALJ properly noted that such a conclusory opinion was "inherently neither valuable nor persuasive" because it was on an issue, i.e., disability, clearly reserved to the Commissioner. (Tr. 22). See 20 C.F.R. § 416.920b(c)(3).

### C. The Vocational Expert's Testimony

At Step 5, the VE testified that a person with Plaintiff's RFC and vocational/educational characteristics could do the jobs of Marker, Routing Clerk and Office Helper. (Tr. 83-84). The VE noted that "about 130,000" marker jobs are available nationally, "about 30,000" router jobs and "about 12,000" office helper jobs. Id. Plaintiff opted not to cross-examine the VE regarding this testimony. (Tr. 85).

Plaintiff now asserts that the VE's failure to explain the basis for the "cited numbers or how they were determined" creates impermissible ambiguity requiring remand. (ECF No. 10 at pp. 11-12). The Commissioner counters that Plaintiff waived this argument by failing to raise it at the administrative level, and that, in any event, substantial evidence supports the VE's testimony. (ECF No. 12 at pp. 9-11).

The Court need not progress beyond the waiver argument. Case law in this District is clear that a Plaintiff is required to first raise any objection at the administrative level in order to pursue such a claim before the District Court. "Plaintiff's [ ] argument fails because it was waived by Plaintiff's failure to raise his challenge…before the ALJ." Scott B. v. Kijakazi, No. CV 21-481MSM, 2022 WL 17335993, at *9 (D.R.I. Nov. 30, 2022), report and recommendation adopted, No. 1:21-cv-00481-MSM, 2023 WL 1794576 (D.R.I. Feb. 7, 2023). This is true, even in cases such as this, where the burden has shifted to the Commissioner at Step 5. See Gould v. Colvin, No. CV 16-004S, 2017 WL 979026, at *8 (D.R.I. Jan. 25, 2017) ("[p]laintiff passed up not one, but two chances to ask a VE to provide the DOT numbers. The failure to do so at either hearing waives her right to raise the issue

now."). Because Plaintiff's counsel opted not to question the VE about the numbers provided to address the purported ambiguity of which he now complains, (Tr. 85), the argument is waived.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 10) be DENIED and that the Commissioner's Motion for an Order Affirming (ECF No. 12) be GRANTED. I further recommend that Final Judgment enter in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 18, 2023